# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN L. DOYNE HOSPITAL      )
)
      Plaintiff,      )
)
      v.      )      Case No. 1:07-cv-1592 JDB
)
MICHAEL O. LEAVITT, in his official)
capacity as Secretary of the Department of)
Health and Human Services,      )
)
      Defendant.      )

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure Rule 56 and this Court's scheduling order dated March 19, 2008, Plaintiff, John L. Doyne Hospital ("Doyne Hospital"), by and through its attorneys, hereby moves this Court for summary judgment. In support of its Motion, Plaintiff relies on the accompanying memorandum of points and authorities, statement of undisputed facts, and the certified Administrative Record; other documents on file with the Court; and all matters of which the Court may take judicial notice.

Doyne Hospital respectfully requests that this Court grant summary judgment in its favor and: (a) reverse the final decision of the Secretary of the Department of Health and Human Services (the "Secretary") as arbitrary, capricious, and an abuse of discretion, and otherwise not in accordance with the law; (b) find that Milwaukee County (the "County"), as the past owner and operator of Doyne Hospital, has incurred and will continue to incur post-retirement benefits for which it is entitled to reimbursement under the Medicare program; and (c) order the Secretary to pay Doyne Hospital approximately $11.05 million, plus interest to which it is entitled pursuant to 42 U.S.C. § 1395oo (f)(2) (2000), or, in the alternative, find that the County is entitled to be

reimbursed for the post-retirement benefits incurred and paid from 1995 through 2007 since Doyne Hospital's termination from the Medicare program in 1995, and order the Secretary to permit the County to submit Medicare cost-reports for reimbursement of allowable future post-retirement expenses as accrued in the period in which they are incurred and liquidated in accordance with 42 C.F.R. § 413.100(c)(2)(vii).

Respectfully submitted,

Simon E. Dance (Bar No. 436432)
Lena Robins (Bar No. 457251)
Foley & Lardner LLP
3000 K Street N.W., Suite 500
Washington, DC 20007
(202) 672-5300
(202) 672-5399 (facsimile)

*Attorneys for Plaintiff*

2

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN L. DOYNE HOSPITAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  1:07-cv-1592 JDB |
| | ) | |
| MICHAEL O. LEAVITT, in his capacity as | ) | |
| Secretary of the Department of Health and | ) | |
| Human Services, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Simon E. Dance (Bar No. 436432)
Lena Robins (Bar No. 457251)
Foley & Lardner LLP
3000 K Street, NW, Suite 500
Washington, DC 20007
202.672.5300 (phone)
202.672.5399 (fax)

*Attorneys for Plaintiff*

WASH_4049901.1

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................... 1

II.    STATUTORY AND REGULATORY BACKGROUND .................................. 2

       A.    Medicare Reimbursement for Hospitals ............................................. 2

       B.    Retirement Health Benefits Costs ..................................................... 3

       C.    Procedures for Hospital Reimbursement and Appeals ..................... 4

III.   STATEMENT OF UNDISPUTED FACTS AND PRIOR PROCEEDINGS ................... 5

IV.    STANDARD OF REVIEW ........................................................................ 10

V.     ARGUMENT ............................................................................................ 12

       A.    The CMS Administrator's Disallowance of Doyne Hospital's Post-
             Retirement Benefit Costs Was Arbitrary, Capricious, and Contrary to the
             Law, and Should Be Reversed .......................................................... 12

             1.    The Medicare Statute and Regulations Provide Reimbursement for
                   Reasonable and Necessary Costs. ............................................ 14

             2.    The PRRB Decision is Contrary to 42 U.S.C. § 1395x(v)(1)(A)(ii),
                   Which Requires the Secretary to Devise a Reasonable Procedure to
                   Provide Equitable Reimbursement for the Post-Retirement Benefit
                   Costs Incurred by Medicare Participating Providers. .............. 19

             3.    The PRRB Decision Does Not Follow the Provider
                   Reimbursement Manual Rules. ................................................ 21

             4.    The PRRB Decision Ignored the Intermediary's Inconsistent
                   Treatment of Doyne Hospital's Sick Leave Costs Which the
                   Intermediary Accepted as Allowable. ...................................... 22

       B.    The PRRB Decision is Contrary to the Medicare Statute's Cost-Shifting
             Prohibition .......................................................................................... 23

VI.    CONCLUSION ......................................................................................... 26

i

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abington Crest Nursing and Rehab. Ctr. v. Leavitt,*
 __ F. Supp. 2d __, 2008 WL 821751 (D.D.C. 2008) ..............................................24

*Auer v. Robbins,*
 519 U.S. 452 (1997)..............................................................................................10

*Califano v. Sanders,*
 430 U.S. 99 (1977)...........................................................................................10, 13

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
 467 U.S. 837 (1984)...................................................................................... 10-11, 13

*Christensen v. Harris County,*
 529 U.S. 576 (2000).............................................................................................11

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
 401 U.S. 402 (1971)..........................................................................................10, 13

*Cmty. Hosp. of Monterey Peninsula v. Thompson,*
 323 F.3d 782 (9th Cir. 2003) ...............................................................................24

*Dickinson v. Zurko,*
 527 U.S. 150 (1999).............................................................................................10

*Fed. Mar. Comm'n v. Seatrain Lines, Inc.,*
 411 U.S. 726 (1973).............................................................................................11

*Gardebring v. Jenkins,*
 485 U.S. 415 (1988).............................................................................................11

*Howard University v. Bowen,*
 No. 85-CV-3342, 1988 WL 33508 (D.D.C. March 29, 1988) ...............................24

*Marymount Hosp., Inc. v. Shalala,*
 19 F.3d 658 (D.C. Cir. 1994)................................................................................10

*Mem'l Hosp./Adair County Health Ctr., Inc. v. Bowen,*
 829 F.2d 111 (D.C. Cir. 1987)..............................................................................17

*Mercy Catholic Med. Ctr. v. Thompson,*
 380 F.3d 142 (3rd Cir. 2004) ...............................................................................24

*Sioux Valley Hospital v. Bowen,*
 792 F.2d 715 (8th Cir. 1986) ...........................................................................23-24

ii

*Sisters of St. Francis Health Services, Inc. v. Schweiker,
   514 F. Supp. 607 (D.D.C. 1981) ................................................................. 17-18

St. James Hosp. v. Heckler,
   760 F.2d 1460 (7th Cir. 1985) .................................................................... 23

*St. Joseph's Hosp. v. Blue Cross and Blue Shield Ass'n/Blue Cross of Cal.,
   C-83-4041-MHP (N.D. Cal. Sept. 4, 1984) ............................................... 19

Thomas Jefferson Univ. v. Shalala,
   512 U.S. 504 (1994) ......................................................................... 10-11, 17

United States v. Shimer,
   367 U.S. 374 (1961) ................................................................................... 11

Volkswagenwerk Aktiengesellschaft v. Fed. Mar. Comm'n,
   390 U.S. 261 (1968) ................................................................................... 11

Wayne County General Hospital v. Leavitt,
   470 F. Supp. 2d 775 (E.D. Mich. 2007) ...................................................... 18

## FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

42 C.F.R. § 405.1803 ......................................................................................... 4

42 C.F.R. § 405.1835 ......................................................................................... 4

42 C.F.R. § 405.1867 ......................................................................................... 4

42 C.F.R. § 405.1875 ......................................................................................... 4

42 C.F.R. § 413.5 ............................................................................................. 23

42 C.F.R. § 413.9 ............................................................................................. 23

42 C.F.R. § 413.20 ............................................................................................. 4

42 C.F.R. § 413.24 ............................................................................................. 4

42 C.F.R. § 413.50 ........................................................................................... 23

42 C.F.R. § 413.60 ............................................................................................. 4

42 C.F.R. § 413.100 ................................................................................... Passim

5 U.S.C. § 551 et seq. ...................................................................................... 10

5 U.S.C. § 706(2)(A) ....................................................................................... 23

WASH_4049901.1

5 U.S.C. §§ 706(2)(A), (E) (2000 & Supp III) ................................................10, 16

42 U.S.C. § 1395c .................................................................................................2

42 U.S.C. § 1395cc ...............................................................................................2

42 U.S.C. § 1395d .................................................................................................2

42 U.S.C. § 1395f(b)(1) ........................................................................................2

42 U.S.C. § 1395h .................................................................................................4

42 U.S.C. § 1395i ..................................................................................................2

42 U.S.C. § 1395oo ...............................................................................................4

42 U.S.C. § 1395oo(a), (b) ...................................................................................4

42 U.S.C. § 1395oo(f)(1) ............................................................................4, 10, 16

42 U.S.C. § 1395ww(d) .........................................................................................2

42 U.S.C. § 1395x(v)(1)(A) (2000) ............................................................14, 16, 24

42 U.S.C. § 1395x(v)(1)(A)(i) ............................................................................23

42 U.S.C. § 1395x(v)(1)(A)(ii) .......................................................................18-19

Balanced Budget Act of 1997, Pub. L. No. 105-33, 111 Stat. 251 ......................3

Pub. L. No. 98-21, 97 Stat. 65 .............................................................................2

Title XVIII of the Social Security Act, Pub. L. No. 89-97, 79 Stat. 290 (1965) ...........................2

## OTHER AUTHORITIES

Milwaukee County Code of Gen. Ordinances, Ch. 17, § 17.14(7)(m) (2006) .................5

Provider Reimbursement Manual (CMS Pub. 15), Part I, § 2176 .................................21

Provider Reimbursement Manual (CMS Pub. 15), Part I, § 2140.1 .............................3

*St. Joseph's Hospital v. Blue Cross and Blue Shield Association/Blue Cross of California,*
PRRB Dec. No. 83-D104 (July 5, 1983) ...........................................................19

WASH_4049901.1

## I.    INTRODUCTION

This case involves a dispute over the disallowance of Medicare payments due to John L. Doyne Hospital ("Doyne Hospital" or the "Hospital"), a public hospital which participated in the Federal Medicare program until December 22, 1995. There are no disputed material facts, and thus the case is ripe for summary judgment. The sole issue before this Court is whether the Centers for Medicare & Medicaid Services ("CMS") Administrator improperly disallowed Doyne Hospital's claim for post-retirement health benefit costs, which based on revised and updated amounts now total approximately $11.05 million, after it voluntarily terminated its participation in the Medicare program in 1995.

Doyne Hospital, a public, acute care hospital which was owned and operated by Milwaukee County (the "County"), participated in the Medicare program for nearly 30 years until it voluntarily terminated its participation on December 22, 1995. The County is legally and contractually required to provide post-retirement health insurance benefits to County employees who worked at Doyne Hospital and their dependents based on a minimum of 15 years of service.

Since the closure of Doyne Hospital in 1995, the County has made payments and will continue to make payments for retirees and their eligible dependents. The vesting time for these benefits was based, entirely or in part, on these individuals' employment at Doyne Hospital while it was participating in the Medicare program. It is undisputed that the County actually made payments for Doyne Hospital retirees following its termination from Medicare and that the services rendered by these retired employees provided a direct benefit to the Medicare program. Furthermore, the County is contractually obligated to continue to make such payments on behalf of those retirees who provided reasonable and necessary services to Medicare beneficiaries, an obligation it will continue to satisfy.

WASH_4049901.1

Doyne Hospital respectfully requests this Court find that the disallowance of its reasonable and necessary Medicare costs is improper and recognize the allowability of the retiree costs, which Milwaukee County paid and must continue to pay for employees who worked at Doyne Hospital during the time it participated in the Medicare program.

## II.    STATUTORY AND REGULATORY BACKGROUND

### A.    Medicare Reimbursement for Hospitals

Title XVIII of the Social Security Act, Pub. L. No. 89-97, 79 Stat. 290 (1965) (codified, as amended, in scattered sections of 42 U.S.C.), sets forth a federally funded health insurance program for the elderly and disabled, known as Medicare.   The Medicare program is administered by the Secretary of Health and Human Services ("Secretary") through the CMS, which was formerly known as the Health Care Financing Administration.  Part A of Title XVIII authorizes payments for covered inpatient hospital services and related post-hospital services, and is funded by hospital insurance taxes.  42 U.S.C. §§ 1395c, 1395d, 1395i (2000 & Supp. IV).

An entity, including a hospital, that furnishes those services covered by Part A is known as a provider of services.  *Id.* § 1395cc.  A hospital may participate in the Medicare program as a provider by entering into a provider agreement.  *Id.*  Part A reimbursement is made through a fiscal intermediary, a private entity that acts as the Secretary's agent.  *Id.* § 1395h.

Historically, hospitals participating in the Medicare program were reimbursed for services furnished to Medicare beneficiaries on the basis of the provider's "customary charges" or the "reasonable cost" of services furnished to program beneficiaries.  *Id.* § 1395f(b)(1).  In 1983, Congress amended the Medicare statute to provide for the payment of inpatient hospital services on a prospective basis.  Social Security Amendments of 1983, Pub. L. No. 98-21, 97 Stat. 65 (codified, as amended, in scattered sections of 26 and 42 U.S.C.); *see also* 42 U.S.C.

2

§ 1395ww(d).[1] Under the prospective payment system, hospitals are reimbursed for services on the basis of prospectively determined national and regional rates, which primarily depend on the Diagnosis Related Group ("DRG") into which patients are categorized stemming from their diagnoses at discharge. The DRG rates are intended to estimate the average costs of caring for patients with a particular diagnosis.

### B.    Retirement Health Benefits Costs

The Medicare program recognizes expenses incurred for retiree health benefits as a reasonable and necessary cost under certain circumstances. 42 C.F.R. § 413.100(c)(2)(vii)(C) (2007). Post-retirement benefit plans are recognized as "deferred compensation," subject to the provisions of 42 C.F.R. § 413.100 and applicable program instructions. *Id.* § 413.100(c)(2)(vii)(C). The Medicare rules define deferred compensation as "remuneration currently earned by an employee but which is not received until a subsequent period, usually after retirement." Provider Reimbursement Manual (CMS Pub. 15), Part I, § 2140.1.

Deferred compensation plans can be funded or unfunded. Reasonable provider payments made under "unfunded deferred compensation plans are included in allowable costs . . . during the cost reporting period in which the actual payment is made to the participating employee." 42 C.F.R. § 413.100(c)(2)(vii)(A). "Accrued liability related to contributions to a funded deferred compensation plan must be liquidated within one (1) year after the end of the cost reporting period in which the liability is incurred." *Id.* § 413.100(c)(2)(vii)(B). Notably, the Medicare regulations and program guidance do not address how a provider will receive Medicare

---

[1] Since 1983, Congress has implemented prospective payment for many other services, including hospital outpatient services. *E.g.,* Balanced Budget Act of 1997, Pub. L. No. 105-33, 111 Stat. 251 (codified as amended in scattered sections of 2, 8, 26, 38, 40, 42, 47 U.S.C.)(authorizing implementation prospective payment system for hospital outpatient services).

WASH_4049901.1

payments for its reasonable and necessary deferred compensation costs when those payments are made to participating employees after a provider terminates from the Medicare program.

### C.    Procedures for Hospital Reimbursement and Appeals

As previously noted, Part A providers of services are reimbursed through a fiscal intermediary, which reviews claims for reimbursement and administers payment. 42 U.S.C. § 1395h. A provider is required to file a Medicare cost report annually with the fiscal intermediary in order to be reimbursed. 42 C.F.R. §§ 413.20, 413.24. After receiving such a cost report, the intermediary conducts an audit and makes a final determination of the total amount of reimbursement owing by Medicare, which is set forth in an initial Notice of Program Reimbursement ("NPR"). *Id.* §§ 405.1803, 413.20, 413.60.

If a provider is dissatisfied with any aspect of the reimbursement provided in the initial NPR, it may request a hearing before the Provider Reimbursement Review Board ("PRRB"). 42 U.S.C. § 1395oo; 42 C.F.R. § 405.1835. In order to qualify for PRRB review, the amount in controversy must be at least $10,000 ($50,000 for a group appeal), and the hearing request must be submitted within 180 days of the initial NPR. 42 U.S.C. § 1395oo(a), (b).

If the jurisdictional prerequisites are satisfied and the PRRB has authority to decide the matter at issue, the PRRB may hold a hearing and issue a decision. 42 C.F.R. § 405.1867. The decision of the PRRB is subject to further review by the CMS Administrator, the Secretary's delegate, who may reverse, affirm, or modify the decision within 60 days after the provider is notified of the PRRB's decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1875. The decision of the CMS Administrator, or that of the PRRB if the Administrator declines to review the matter, becomes the final decision of the Secretary. Within 60 days of the final agency decision, the provider may request judicial review in a federal district court with venue. 42 U.S.C. § 1395oo(f)(1). This is the procedural posture of the case now before this Court.

4

III.    **STATEMENT OF UNDISPUTED FACTS AND PRIOR PROCEEDINGS**

There are no disputed material facts in this case. To the contrary, the parties have entered into a Joint Stipulation as to all factual matters.[2] Administrative Record ("A.R.") at 768-75. The County owned and operated Doyne Hospital, which was a public, acute care hospital located in Milwaukee, Wisconsin. (A.R. at 770.) On December 22, 1995, Doyne Hospital voluntarily terminated its operations and ceased participation in the Medicare program. *Id.* The County made the difficult decision to close Doyne Hospital, which primarily served a low-income, indigent patient population, as a result of financial pressures. (A.R. at 53-54.) Upon termination of its Medicare provider agreement, Doyne Hospital's assets were sold to Froedtert Memorial Lutheran Hospital. (A.R. at 771.)

Employees of Doyne Hospital who were hired before January 1, 1994, and who worked for Doyne Hospital and any other Milwaukee County departments for 15 years before retiring are entitled to post-retirement health insurance benefits from the County, as required by the Milwaukee County Code and pursuant to union contracts. (A.R. at 771.) These eligible employees, "upon retirement[,] shall be allowed to continue in the county group health benefit program and the county shall pay the full monthly cost of providing such coverage." Milwaukee County Code of Gen. Ordinances, Ch. 17, § 17.14(7)(m) (2006). All eligible employees enjoy the same post-retirement benefits, which vest after 15 years of eligible service, regardless of the time employed. *See id.*

---

[2] In conjunction with the hearing held before the PRRB on March 9, 2006, Doyne Hospital and the Intermediary, United Government Services, LLC, submitted a Joint Stipulation of Facts, which was made a part of the administrative record, (A.R. at 776-82.), and Corrected Joint Stipulation of Facts, (A.R. at 768-75.). (Doyne Hospital will exclusively reference the Corrected Joint Stipulation herein.) As these pleadings reflect, the only potential factual dispute between the parties concerns the methodology employed by Doyne Hospital to determine the amount of its reimbursement claim. This methodology, however, is not at issue in this action. Here, the sole issue before the Court is the Medicare allowability of the post-retirement health benefits claimed by Doyne Hospital.

Pursuant to the Milwaukee County Code and the union contracts, the County made its required payments for liabilities associated with its retiree health benefit program during the time period Doyne Hospital participated in the Medicare program. (A.R. at 771.) After the closure of the Hospital, the County continued to make these payments for retired employees and their eligible dependents. (A.R. at 771.) The County will continue to make these benefit payments until there are no longer any eligible employees or dependents entitled to receive such benefits. (A.R. at 771.) Based on well established actuarial assumptions, the County estimates that this will occur sometime in the year 2044.

In May 1996, Doyne Hospital filed its final Medicare cost report with its fiscal intermediary, United Government Services, LLC (the "Intermediary").[3] (A.R. at 772.) Doyne Hospital made a claim in this cost report for reimbursement based on liabilities that had been incurred through the date it terminated its Medicare participation. (A.R. at 772.)

Subsequently, on July 31, 1998, the Hospital filed an amended cost report ("Amended Cost Report"), which claimed reimbursement for additional post-retirement health benefit costs. (A.R. at 772.) The additional costs included: (1) the cost of an appraisal study; (2) legal expenses relating to closure; and (3) further post-retirement health benefit costs. (A.R. at 772.) Doyne Hospital provided to the Intermediary supporting information and documentation for each category of revised costs. Specific to the post-retirement health benefits, the Amended Cost Report adjusted the previously reported costs to add the actual retiree health benefit expenses paid by the County for qualifying Doyne Hospital employees during the years 1996 and 1997, as well as a projection of retiree health benefit expenses for future years. (A.R. at 772.) At the time Doyne Hospital filed its final cost report, this information was not available and, therefore, was

---

[3] United Government Services, LLC, is now known as National Government Services.

included on the Amended Cost Report. On January 18, 2000, the Intermediary issued a NPR, which disallowed the claimed post-retirement health benefit costs as not reasonable and necessary. (A.R. at 773.)

Doyne Hospital timely appealed the Intermediary's denial of the post-retirement health benefit claim on July 11, 2000, to the PRRB.[4] (A.R. at 773.) Prior to the March 9, 2006, hearing before the PRRB, Doyne Hospital submitted an updated claim to the Intermediary on April 26, 2004, relating to the Amended Cost Report's calculations for retiree health benefits. (A.R. at 773.) The updated claim sought $12,107,189 in Medicare reimbursement related to the retiree health benefit costs, and was based on the County's extensive examination of the data supporting its actual paid costs through 2002 and for its projected future costs through 2044. (A.R. 773-74.) As part of this process, a certified actuarial expert reviewed and provided an analysis of the County's actuarial methodology used to calculate the actual retiree health costs paid for the years 1996 to 2002, and for future retiree costs for years 2003 through 2044.

Since the PRRB hearing and the filing of the Complaint in this action, the County undertook another review of its methodology and payments data in order to update the claim to account for the actual paid costs through 2007. To that end, the County has arrived at an updated claim of $11,049,847; approximately $1 million less than the $12,107,198 claim presented at the PRRB hearing. To arrive at this updated claim, the County obtained actual cost data from third party administrators, retained the services of a certified actuary to review the sampling methodology and cost calculations, and applied the same actuarial assumptions that were used in

---

[4] The Intermediary initially challenged the PRRB's jurisdiction over Doyne Hospitals' post-retirement health benefit claim. (A.R. at 773.) In a decision dated December 3, 2003, the PRRB ruled that it had jurisdiction over the Hospital's claim for the fiscal year ending December 22, 1995. (A.R. 773.) This appeal presents no jurisdictional issues.

WASH_4049901.1

the claim presented at the PRRB hearing to determine the net present value ("NPV") calculation. The NPV was then multiplied by the Medicare rate of 5.816 percent for Doyne Hospital.[5] Based upon the Medicare rate of 5.816 percent, the County actually paid $3,921,282 in retiree health benefit costs for the period 1997 through 2007. For the future costs to be incurred in years 2008 through 2044, the County determined the net present value of the future costs and applied the same recovery percentage of 5.816 percent to arrive at the Medicare reimbursement of $7,128,565 that the County would be entitled to if the retiree health costs were allowed for the future years.

It should be noted that the actuarial assumptions include using a discount rate of 4 percent and an inflation rate of 5.5 percent. Notably, the County has used a conservative health care inflation rate (also referred to as the health care trend rate) of 5.5 percent. In addition, for the updated claim through 2007, the County used the same mortality tables and retirement assumptions that were used to develop the 2002 claim. Lastly, as noted above, the total Medicare claim decreased by $1,057,342 from the 2002 estimate of $12,107,189, resulting in a revised total of $11,049,847. This moderate decrease is primarily due to a change in the future cost calculation, whereby Doyne Hospital participation was determined by age group instead of an overall percentage for all age groups. As of 2002, the percentage of former Doyne Hospital employees in the entire retiree population was over 20 percent; upon applying an age group methodology to the overall percentage, that percentage has decreased to 12.58 percent for future

---

[5] The recovery percentage of 5.816 percent represents the rate at which the retiree health costs would be reimbursed if they had been included in Doyne Hospital's final cost report. It was calculated as the increase in Medicare reimbursement resulting from inclusion of one year of the retiree health costs on the final cost report divided by the retiree health care costs for that one year (excluding reimbursement related to the loss on sale of buildings and assets). The percentage, therefore, reflects only services provided on a cost basis and services furnished to Medicare beneficiaries. This percentage was communicated to the Intermediary by the County in a letter dated July 31, 1998, and the Intermediary has never raised any objections to the validity of the percentage. (A.R. at 701-03.)

WASH_4049901.1

years.  This decrease is attributable to the higher average age of the Doyne Hospital retirees.  This retesting of the population has resulted in greater accuracy in calculating the County's future retiree health benefit costs but has not otherwise altered the underlying methodology used to develop the County's reimbursement claim.

It is important to emphasize that all the entities to whom this methodology has been presented — which include the Intermediary, the PRRB, and the CMS Administrator — have not disputed the methodology used by the County to arrive at the post-retirement health benefit costs, which it incurred and anticipated based on Doyne Hospital's service to Medicare beneficiaries during participation in the Medicare program.  There has been no question nor dispute that the County adopted a reasonable methodology to account for both the incurred and future costs it will have to pay to provide the retiree health benefit for former Doyne Hospital employees, and this methodology represents a reasonable and actuarially sound basis on which to reimburse the County for its future costs.  Given that the methodology is unchallenged, the County's revised 2007 claim should be adopted by the Secretary.

Following extensive briefing and a hearing with expert testimony held on March 9, 2006, the PRRB issued a decision dated May 10, 2007.  (A.R. at 14-19.)  The PRRB ruled in favor of the Intermediary, upholding the denial of Doyne Hospital's claim for post-retirement health benefits costs.  (A.R. at 14-19.)  In reaching its decision, the PRRB relied solely on 42 C.F.R. § 413.100(c)(2)(vii) (the "Deferred Compensation Regulation"), and — in conclusory fashion — held that the post-retirement benefits at issue were considered to be deferred compensation and, therefore, not subject to Medicare reimbursement.  (A.R. at 18-19.)  In a written notice issued on July 9, 2007, the CMS Administrator declined to review the PRRB decision, effectively resulting in an affirmance of the PRRB decision.  (A.R. at 1.)

9

On September 7, 2007, Doyne Hospital timely filed this action seeking reversal of the CMS Administrator's final decision, and an order requiring the Intermediary to reverse the disallowance of the Hospital's post-retirement health benefit claim. The Court issued a revised scheduling order on March 19, 2008, setting forth the deadlines for the parties' cross-motions for summary judgment. Accordingly, Doyne Hospital now moves for summary judgment on the grounds that, as a matter of law, the Hospital is entitled to Medicare reimbursement for the reasonable and necessary costs associated with the post-retirement health benefits that it has provided and will continue to provide to former employees of Doyne Hospital and their dependents.

## IV.    STANDARD OF REVIEW

Jurisdiction over this action is based on 42 U.S.C. § 1395oo(f)(1) (2000), which provides for judicial review of final Medicare provider reimbursement decisions under the terms of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*; *e.g., Marymount Hosp., Inc. v. Shalala*, 19 F.3d 658, 661 (D.C. Cir. 1994). Among other statutorily prescribed reasons, a reviewing court may set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence in a case . . . reviewed on the record of an agency hearing provided by statute." 5 U.S.C. §§ 706(2)(A), (E) (2000 & Supp III); *e.g., Dickinson v. Zurko*, 527 U.S. 150, 152-53 (1999); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413-14 & n.30 (1971), *overruled on unrelated grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). When applying this standard, a reviewing court may not merely rubber stamp the Secretary's actions, but must ensure that the agency's ruling is neither clearly erroneous nor inconsistent with applicable regulations. *Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994).

Generally, an agency's construction of the statute it administers is governed by *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) (hereinafter "*Chevron*"). There are two steps to a court's review under *Chevron*. First, the court must determine "whether Congress has directly spoken to the precise question at issue." *Id.*. at 842. If Congress's intent "is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. If the statute is found to be "silent or ambiguous with respect to the specific issue," the court must engage in the second step of the *Chevron* analysis, which involves determining whether the agency's interpretation is based on a "permissible construction of a statute." *Id.* at 843. When it appears from the legislative history that an agency's interpretation "'is not one that Congress would have sanctioned,'" a court should not defer to the agency's interpretation. *Id.* at 845 (quoting *United States v. Shimer*, 367 U.S. 374, 383 (1961)).

The Supreme Court has applied a similar standard of review of an agency's interpretation of its regulations. A court is required to defer to an agency's interpretation "only when the regulation's language is ambiguous." *Christensen v. Harris County*, 529 U.S. 576, 577 (2000). In particular, a court should not defer to an agency's interpretation of its own regulations when an "'alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.'" *Thomas Jefferson Univ.* 512 U.S. at 512 (quoting *Gardebring v. Jenkins*, 485 U.S. 415, 430 (1988)). Although reviewing courts generally confer considerable deference to an agency's interpretation of its own regulatory scheme, when the actions of an agency are "'inconsistent with a statutory mandate or . . . frustrate the congressional policy underlying a statute,'" such deference is not due. *Fed. Mar.*

WASH_4049901.1

*Comm'n v. Seatrain Lines, Inc.*, 411 U.S. 726, 746 (1973) (quoting *Volkswagenwerk Aktiengesellschaft v. Fed. Mar. Comm'n*, 390 U.S. 261, 272 (1968)).

## V. ARGUMENT

### A. The CMS Administrator's Disallowance of Doyne Hospital's Post-Retirement Benefit Costs Was Arbitrary, Capricious, and Contrary to the Law, and Should Be Reversed

The PRRB decision, affirmed by the CMS Administrator, relied on the Deferred Compensation Regulation to uphold the Intermediary's determination that the post-retirement benefits at issue in this action are not reimbursable under the Medicare program. (A.R. at 14-19.) Without elaboration or explanation as to why Doyne Hospital was not entitled under governing law to Medicare reimbursement for the reasonable and necessary post-retirement health benefit costs, the PRRB summarily stated that "the type of post-retirement health benefit costs at issue . . . are deferred compensation," and, therefore, not subject to Medicare reimbursement. (A.R. at 18-19.)

The Deferred Compensation Regulation states, in pertinent part:

(A)  Reasonable provider payments made under unfunded deferred compensation plans are included in allowable costs only during the cost reporting period in which actual payment is made to the participating employee.

* * * *

(C)  Postretirement benefit plans . . . are deferred compensation arrangements and thus are subject to the provisions of this section regarding deferred compensation and to applicable program instructions for determining Medicare payment for deferred compensation.

42 C.F.R. § 413.100(c)(2)(vii)(A), (C).  Here, the parties do not dispute that Doyne Hospital operated an unfunded post-retirement benefits plan, which met 42 C.F.R. § 413.100(c)(2)(vii)(C)'s definition of "deferred compensation." However, the PRRB improperly relied on the Deferred Compensation Regulation to determine that because Doyne Hospital's

12

post-retirement plan amounted to deferred compensation, "the costs in dispute may not be reimbursed by the Medicare program." (A.R. at 19.)   Indeed, the Deferred Compensation Regulation is wholly insufficient to resolve this dispute, because the regulation, as well as the Medicare statute, is silent as how post retirement benefits should be treated *after a provider terminates its participation in the Medicare program* — the material issue in this case.  The PRRB's cursory application of the Deferred Compensation Regulation and accompanying failure to address the material issue on appeal, resulted in a determination that was arbitrary, capricious, and contrary to the law. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413-14 & n.30 (1971), *overruled on unrelated grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). Thus, it follows that the CMS Administrator's summary affirmance of the PRRB decision similarly violates the law. *Citizens to Preserve Overton Park*, 401 U.S. at 413-14 & n.30.

The Medicare rules themselves simply do not provide a mechanism for a provider to be reimbursed for reasonable and necessary costs paid *after termination* from the Medicare program.  Where a statute is silent on a particular issue, the court must determine whether the agency's interpretation is based on a permissible construction of the statute. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984).  Here, the CMS Administrator — in declining to review the PRRB decision — impermissibly construed the Deferred Compensation Regulation to apply identically to the post-retirement benefit costs of both terminated and active providers.   By doing so, the CMS Administrator improperly consented to a flawed finding by the PRRB that read into the statute and regulations an application which is contrary to the intent of Congress. The PRRB failed to address key sections of the Social Security Act and Medicare regulations, along with provisions of CMS's own guidelines, when making its determination, which amply illustrates that Congress intended to

13

reach a result precisely opposite to that reached by the PRRB and affirmed by the CMS Administrator.

### 1. The Medicare Statute and Regulations Provide Reimbursement for Reasonable and Necessary Costs.

In upholding the PRRB decision, the CMS Administrator failed to follow 42 U.S.C. § 1395x(v)(1)(A) (2000), which expressly requires that providers be reimbursed for reasonable and necessary costs incurred in providing services to Medicare beneficiaries. The County's obligation to pay the post-retirement benefits was a cost of services provided to Medicare beneficiaries while Doyne Hospital was a Medicare participating provider. Therefore, these costs reflect Doyne Hospital's cost of providing services to Medicare beneficiaries.

It is undisputed that the retiree health costs at issue in this case are allowable costs under the Medicare program. The Deferred Compensation Regulation provides that reasonable provider payments made under an unfunded deferred compensation plan are included in allowable costs during the cost reporting period in which actual payment is made to the participating employee. (A.R. at 162.) The Intermediary itself has never disputed that the costs at issue in this case are related to reasonable retirement benefits earned by employees of Doyne Hospital while providing health care services to Medicare beneficiaries. (A.R. at 53-59, 553-567, 631-652.) Thus, the Intermediary acknowledges that the costs at issue are reasonable and necessary costs to which Doyne Hospital would be entitled to Medicare reimbursement if it were still a Medicare participating hospital. Moreover, neither the PRRB nor the CMS Administrator upon review took issue with this finding.

The PRRB decision improperly applied the Deferred Compensation Regulation to deny these reasonable and necessary costs solely on the basis that they are only allowed during those cost reporting periods in which actual payments are made. (A.R. at 18-19.) According to the

14

PRRB, this means that Doyne Hospital is not entitled to Medicare reimbursement for these reasonable and necessary costs simply because it is no longer an active Medicare participating hospital. This position is wholly without merit for two reasons.

First, it is undisputed that the County *actually paid* $89,084,159 during the years 1996 through 2007 for retiree health care benefits related to former employees of Doyne Hospital. The County submitted to the Intermediary an updated claim to the 1998 Amended Cost Report with respect to these actual payments for the years 1996 through 2002 made for the employees of Doyne Hospital and the future costs it will pay — the Intermediary, however, failed to take any action with respect to this claim.[6]

Second, the Deferred Compensation Regulation relied on by the PRRB to support its determination that the costs at issue in this case would be allowable only during those cost reporting periods in which actual payments are made — 42 C.F.R. § 413.100(c)(2)(vii)(A) — does *not* preclude a provider from seeking Medicare reimbursement for such costs after a provider has terminated its participation in the Medicare program. Nor does the Deferred Compensation Regulation — or any other Medicare regulation for that matter — operate to deny a terminated provider reimbursement for such reasonable and necessary costs. Indeed, the County has received reimbursement for years prior to 1995 for the retiree health costs. The County is now in the untenable position of having incurred and paid for these costs since 1995,

---

[6] In addition, the County provided further information in August 2004 at the specific request of the Intermediary, which has never been acted on by the Intermediary. Also, as noted, in light of this action, the County has updated the claim to reflect incurred costs from 1996 to 2007 and future costs from 2008 to 2044.

WASH_4049901.1

but not being able to claim the costs simply because there is no available procedural mechanism for filing cost reports upon termination from the Medicare program.[7]

Thus, the Deferred Compensation Regulation simply cannot be applied to deny reimbursement to which a provider is otherwise entitled under the Medicare statute based solely on the fact that the provider has terminated its participation in the Medicare program. There is no question that the retiree health benefit costs in question would have been recognized and allowed by the Intermediary for Medicare reimbursement purposes at some future time when the benefits were actually paid by the County for the retirees of Doyne Hospital if it was still participating in the Medicare program. Accordingly, here the issue is not one of allowability; rather, it is an issue of timing — which the Medicare statute and regulations simply fail to address.

Although the County's obligation to pay these benefits was a cost of services provided to Medicare beneficiaries while Doyne Hospital was a Medicare participating provider, and therefore, reflects the cost of providing services to Medicare beneficiaries, the PRRB, denied reimbursement for these costs solely because Doyne Hospital was not able to file annual cost reports for the purpose of reporting these expenditures (*i.e.*, payments for retiree health benefits) related to the costs at issue. The PRRB's determination is inconsistent with the Medicare statute's overarching requirement that Medicare providers be reimbursed for reasonable and necessary costs incurred in providing services to Medicare beneficiaries.  42 U.S.C. § 1395x(v)(1)(A).

---

[7] The County has prepared but has not filed Doyne Hospital cost reports since 1995. Pending resolution of this matter, the County has not filed these costs reports because neither the Intermediary nor CMS have afforded the County a means to file these cost reports.

WASH_4049901.1

Moreover, the PRRB's determination results in the disparate treatment of providers who operate unfunded deferred compensation programs and terminate their participation in the Medicare program. The costs of such programs will be allowable for providers who continue to participate in the Medicare program, but the same costs will not be allowable for those providers who no longer participate in the program. This is an arbitrary and capricious result, which requires reversal of the PRRB's decision under governing law. *See id.* § 1395oo(f)(1); 5 U.S.C. §§ 706(2)(A), (E); *see also Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994); *Mem'l Hosp./Adair County Health Ctr., Inc. v. Bowen,* 829 F.2d 111, 116-17 (D.C. Cir. 1987).

Case law in this jurisdiction dictates this result. Specifically, in *Sisters of St. Francis Health Services, Inc. v. Schweiker*, 514 F. Supp. 607 (D.D.C. 1981), this Court ruled that the unemployment and pension costs attributable to those services rendered to Medicare patients prior to the plaintiff hospital's termination from the Medicare program were allowable costs under the program. *Sisters of St. Francis*, 514 F. Supp. at 614-15. (A.R. at 278-88.) In that case, the plaintiff hospital, like Doyne Hospital, ceased operations on December 31, 1974, and terminated its participation in the Medicare program. After termination, the plaintiff sought reimbursement of its unemployment compensation and pension plan costs arising from the years it provided services to patients under the Medicare program. The CMS Administer ruled that such costs were not reimbursable. On appeal, this Court reversed the Secretary stating:

> Based upon the evidence of record the Court concludes that Defendant's disallowance of unemployment compensation costs is not proper. *These unemployment costs that were paid in 1975 represent reimbursement to the state of Indiana for unemployment compensation benefits paid to former employees attributable to services rendered to Plaintiff while it was participating in the Medicare program. Therefore, these items constitute allowable costs to the Plaintiff.*
>
> *The unemployment benefits were earned by employees when providing services to Medicare beneficiaries and other patients. The costs were accrued at the time of notices of termination of employment which were issued prior to the*

WASH_4049901.1

> *date of final closing of the Hospital. Even though the precise amounts of those costs were not known at the time of closing, they are costs accrued before termination.* Since the benefits were a function of the duration of employment, the costs should be allocated to other years in addition to the termination year and to that extent should not be included in the "reasonable cost" for purposes of comparison of "reasonable costs" and "customary charges."

*Id.* (emphasis supplied).

The facts here are similar to those presented in *Sisters of St. Francis*. Both cases involve costs relating to benefits that are a function of duration of employment and that were earned on an annual basis over a span of years. In the present case, it is undisputed that the vast majority of the post-retirement benefits were earned prior to Doyne Hospital's closing in December 1995. As stated by this Court in *Sisters of St. Francis*, these benefits accrued before termination, were a function of the duration of employment, and constitute allowable costs to the Hospital. *See id.* This Court should follow the precedent established by *Sisters of St. Francis* and hold that the County is entitled to Medicare reimbursement for the retiree health benefit costs after Doyne Hospital's Medicare termination.

Doyne Hospital is aware of non-precedential case authority from the U.S. District Court for the Eastern District of Michigan, namely *Wayne County General Hospital v. Leavitt*, 470 F. Supp. 2d 775 (E.D. Mich. 2007), that distinguished *Sisters of St. Francis* on other grounds. In *Wayne County*, the court allowed the Secretary wide latitude in determining the method or methods used to calculate the reimbursement. The dispute before that court regarded which calculation method should be used to determine the amount of reimbursement of indirect costs. Of particular note, *Wayne County* involved costs incurred from 1967 until 1984, largely prior to implementation of the inpatient hospital prospective payment system in December 1983. Notwithstanding the holding in *Wayne County*, this Court's precedent in *Sisters of St. Francis* remains good law and the law of this jurisdiction.

18

2.    **The PRRB Decision is Contrary to 42 U.S.C. § 1395x(v)(1)(A)(ii), Which Requires the Secretary to Devise a Reasonable Procedure to Provide Equitable Reimbursement for the Post-Retirement Benefit Costs Incurred by Medicare Participating Providers.**

The Medicare statute specifically directs that the Medicare regulations shall "provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive." 42 U.S.C. § 1395x(v)(1)(A)(ii). Courts interpreting this provision have recognized that providers are entitled to reimbursement in equitable amounts for costs that are related to a provider's termination from the Medicare program. In *St. Joseph's Hospital v. Blue Cross and Blue Shield Association/Blue Cross of California*, PRRB Dec. No. 83-D104 (July 5, 1983), the provider ceased operations in 1979 and sought an adjustment to its final cost report of unemployment and pension costs. (A.R. at 400-08.) Relying on 42 U.S.C. § 1395x(v)(1)(A)(ii), the court remanded the case to the PRRB with the express instructions that the provider's unemployment insurance and pension costs are reimbursable, stating:

> What is in question is the Secretary's treatment of termination costs — costs that are unique to closing — and our obligation to treat them within the meaning of Sec. 1395x(v)(1)(A)(ii). The Secretary may choose to allocate unemployment compensation and pension liability over the earlier cost years or she may devise a reasonable procedure for treating them as termination costs. Whatever procedure is used, plaintiff is entitled to reimbursement in an equitable amount in accordance with subparagraph (ii). The Secretary may not, however, disregard the provisions of that section.

*St. Joseph's Hosp. v. Blue Cross and Blue Shield Ass'n/Blue Cross of Cal.*, C-83-4041-MHP (N.D. Cal. Sept. 4, 1984). (*See* A.R. at 410-12 (discussing case and excerpt).) Here, by refusing to reimburse those costs necessarily incurred by Doyne Hospital during its provision of services to Medicare recipients on grounds that deferred compensation plans are allowable costs only during the cost reporting period in which actual payment is made to the participating employee,

19

the PRRB disregarded the provisions of 42 U.S.C. § 1395x(v)(1)(A)(ii); the PRRB's finding in this case is contrary to the express intent of Congress.

Moreover, the PRRB's application of the Deferred Compensation Regulation to the facts of this case leads to an inequitable result as to the amount of Medicare reimbursement paid by the Hospital for the Medicare costs at issue. The district court in *St. Joseph Hospital's* correctly determined that a provider is entitled to Medicare reimbursement in an equitable amount and the Secretary's discretion lies solely in its authorization to devise a reasonable procedure to achieve that result — not to deny reimbursement altogether. Here too, Doyne Hospital has adopted a reasonable methodology to determine the amount of Medicare reimbursement to which the Hospital is entitled for the retiree health benefits it has paid and will pay. This methodology accounts for both paid costs through 2007 and future costs for the years 2008 to 2044. The County has amply demonstrated that the methodology is reasonable and actuarially sound. Neither the Intermediary nor the PRRB on review have taken issue with the County's methodology. Thus, the Secretary is *obligated* under the Medicare statute either to adopt the County's reasonable methodology, or to devise another that will achieve an equitable result. In this matter, the Secretary has done neither, rendering its decision arbitrary, capricious and contrary to the law and controlling precedent.

Again, under the Deferred Compensation Regulation, 42 C.F.R. § 413.100(c)(2)(vii), the County is entitled to reimbursement of its paid costs for post-retirement benefits for years 1996 to 2007. But for termination, those costs would have been accrued and liquidated by Doyne Hospital pursuant to the regulations in the respective cost-reporting periods. Where, as here, the statute and regulations are silent on post-termination procedures, in the alternative, the Secretary should be ordered to allow the past costs and accept cost-reporting of the future post-retirement

benefits when paid by Doyne Hospital to be submitted for reimbursement as if the termination had not occurred. This would provide Doyne Hospital with equitable relief and remain true to the intent and spirit of the statute and regulations.

### 3.    The PRRB Decision Does Not Follow the Provider Reimbursement Manual Rules.

The PRRB's determination upheld by the Administrator is also inconsistent with the Medicare program's own rules regarding the allowability of costs after a provider has terminated its participation in the program. Under certain circumstances, the Provider Reimbursement Manual ("PRM") allows reimbursement for costs incurred after termination. Provider Reimbursement Manual (CMS Pub. 15), Part I § 2176. Although Section 2176 of the PRM does not expressly address the costs at issue in this case, the manual provision clearly reflects the Medicare program's recognition that Medicare reimbursement is available for costs associated with the provision of services to Medicare beneficiaries prior to termination, even when such costs are actually paid after a provider has terminated its participation in the program. Moreover, Section 2176 identifies a mechanism under which such costs can be claimed and reimbursed and this mechanism was properly adopted by the County in this case.

Doyne Hospital's post-termination retiree health benefit costs are entitled to the same treatment as those post-termination administrative costs recognized under Section 2176. The Medicare program should not be permitted to avoid paying its share of these costs simply because the Medicare regulations fail to specify a process that providers may use to claim these costs following a provider's termination from participation in the program. Doyne Hospital, through the County, has complied with Section 2176 of the PRM by submitting a claim to the Intermediary with supportable documentation, which is the only available process for seeking

21

reimbursement for costs incurred prior to termination, but actually paid after termination from the Medicare program.

### 4. The PRRB Decision Ignored the Intermediary's Inconsistent Treatment of Doyne Hospital's Sick Leave Costs Which the Intermediary Accepted as Allowable.

Furthermore, the PRRB's decision ignored undisputed evidence in the administrative record regarding the Intermediary's inconsistent determination to allow Doyne Hospital's claim for earned but unused sick leave pay, which was of the exact same nature as the retiree health costs. Under a county-wide policy, Milwaukee County employees, who stayed with the County until retirement, were paid for their unused sick leave based on a specified formula. Even though employees earned this benefit during their tenure with the County, only cash payments made to employees as they retired were allowed for cost reporting purposes while Doyne Hospital was a participating Medicare hospital. Therefore, in addition to the retiree health benefit costs, Doyne Hospital also sought reimbursement in its final cost report for earned but unused sick leave pay in the amount of $641,778, which eligible employees would be entitled to receive on retirement. The Intermediary reviewed and allowed these costs during the cost report settlement process.

The earned but unused sick leave costs payable by Doyne Hospital at retirement were of the exact same nature as the retiree health costs. That is: (i) they were incurred but unfunded; (ii) they represented a liability payment to Doyne Hospital employees that will be paid in the future as employees retire from the County; and (iii) actuarial assumptions were used in the calculation of the liability.[8] As discussed in detail, the regulations and PRM provide little guidance with respect to future costs of terminating providers. The Intermediary has discretion in treating costs

---

[8] In fact, the County's liability under the sick leave benefit was contingent upon an employee remaining with the County until retirement whereas the retiree health benefit had already vested for the majority of Hospital employees when the Hospital terminated its participation in Medicare.

22

in a manner that will reimburse a provider for the costs of services it incurred in providing reasonable and necessary services to Medicare beneficiaries as required by the Medicare statute. The Intermediary properly concluded that the sick leave costs payable on retirement should be allowed for a terminating provider even though the County would not pay for the costs until employees actually retired from the County. Given the unique status of Doyne Hospital as a terminating provider, the Intermediary appropriately exercised its discretion to allow these costs in light of the fact that Doyne Hospital had terminated from the Medicare program and the County's sick leave benefit payable on retirement was unfunded.

As the retiree health costs are of the exact same nature as the sick leave costs payable at retirement, the Intermediary's determination should have been identical for both types of claims. Indeed, there can be no rational basis for the Intermediary's adoption of a methodology in which it accepted future sick leave costs for a terminated provider, but refused to follow its own precedent with respect to post-retirement health benefit costs. Accordingly, the PRRB decision should be set aside pursuant to 5 U.S.C. § 706(2)(A) as "arbitrary, capricious, an abuse of discretion, [and] otherwise not in accordance with the law."

**B.     The PRRB Decision is Contrary to the Medicare Statute's Cost-Shifting Prohibition.**

Finally, the PRRB decision to deny reimbursement of Doyne Hospital's post-retirement benefits costs results in Medicare costs being borne by a source other than the Medicare program. Such a result is directly contrary to the Medicare statute's prohibition against cost-shifting — also referred to as cross-subsidization. The Medicare statute states, in pertinent part, that the Medicare regulations shall:

> take into account both direct and indirect costs of providers of services . . . in order that[] . . . the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter will

not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs . . . .

42 U.S.C. § 1395x(v)(1)(A)(i); *see also* 42 C.F.R. § 413.5. The Medicare regulations make it clear that the statutory prohibition on cost-shifting applies not only to the determination of allowable costs, 42 C.F.R. § 413.9, but also to the process of apportioning costs to the Medicare program, 42 C.F.R. § 413.50.

Numerous courts have upheld this statutory prohibition, which is intended to the prevent the shifting of Medicare program costs to non-Medicare patients. *See, e.g., Sioux Valley Hospital v. Bowen*, 792 F.2d 715, 721 (8th Cir. 1986); *St. James Hosp. v. Heckler*, 760 F.2d 1460, 1470, 1472 (7th Cir. 1985); *see also Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 158 & n.18 (3rd Cir. 2004)(holding Secretary's interpretation of the graduate medical education reaudit rule arbitrary and capricious and noting it "may also effect an illegal cost-shifting of Medicare costs to non-Medicare patients, as it will shift costs properly borne by Medicare to other patients"); *Cmty. Hosp. of Monterey Peninsula v. Thompson*, 323 F.3d 782, 786 (9th Cir. 2003) (recognizing that the "Medicare statute and regulations prohibit cost shifting," which can occur when "the necessary costs of delivering health care to Medicare enrollees are borne by individuals who are not Medicare recipients"); *Abington Crest Nursing and Rehab. Ctr. v. Leavitt*, __ F. Supp. 2d __, 2008 WL 821751 (D.D.C. 2008) (recognizing anti-cross subsidization policy in the context of bad debt reimbursement provisions). Indeed, courts have consistently recognized the Medicare prohibition on cost-shifting as a Congressional mandate and a central element of the Medicare reimbursement program. *E.g., Sioux Valley Hosp.*, 792 F.2d at 721 ("Central to the Medicare reimbursement program is that 'reasonable costs' are calculated so that non-Medicare payors do not subsidize the care of Medicare patients"); *Howard University v. Bowen*, No. 85-CV-3342, 1988 WL 33508 (D.D.C. March 29, 1988) ("In the instant case, the

24

policy concern in jeopardy is the Congressional mandate that the costs of Medicare services not be borne by non-Medicare patients.").

Here, there is no dispute that the costs at issue arose from Doyne Hospital's provision of health care services to Medicare beneficiaries. 42 U.S.C. § 1395x(v)(1)(A) requires that the costs that arose from Doyne Hospital's provision of health care services to Medicare beneficiaries be borne by the Medicare program. The PRRB decision, as upheld by the CMS Administrator, will result in these Medicare-related costs being borne instead by the County taxpayers — a result in direct violation of the Medicare statute.

The facts simply do not sustain views to the contrary, and specifically the argument that the County, by claiming the costs at issue in this case, was attempting to shift the costs of County employee benefits to the Medicare program. (*Contra* A.R. at 564-65.) There is no dispute that the costs as issue directly arose from Doyne Hospital's provision of health care services to Medicare beneficiaries. Specifically, the post-employment benefits at issue are enjoyed by retirees and former employees who will soon become retirees of Doyne Hospital. These individuals were part of Doyne Hospital during its service to Medicare. They provided reasonable and necessary services to Medicare beneficiaries. Accordingly, the statutory prohibition on cross-subsidization requires that such Medicare-related costs, appropriately, be born by the Medicare program. To ask that some other party, such as the taxpayers of the County, bear the costs of providing Medicare services would flatly violate the statutory prohibition on cost-shifting.

That Doyne Hospital and its employees were part of a larger County entity does not compel a conclusion to the contrary. Realistically, public hospitals do not operate in isolation, but are always part of a larger entity, whether it be a city, county or state. To consider it

somehow determinative that Doyne Hospital was part of the larger County government would effectively cast public hospitals beyond eligibility for Medicare reimbursement forever; government municipalities will always be connected in some manner to public hospitals and, according to the Intermediary's flawed logic, could always be made responsible for the costs owing to the operation of these hospitals. Such a scenario is contrary to the language of the Medicare statutory cost-shifting prohibition and the intention of Congress.

## VI.    CONCLUSION

For the foregoing reasons, Milwaukee County is entitled to Medicare reimbursement related to the allowable retiree health benefits costs for former employees who worked at Doyne Hospital during the period in which it participated in the Medicare program. Accordingly, the County respectfully requests that this Court reverse the PRRB's final determination denying Medicare reimbursement for the retiree health benefit costs and order the Secretary to make payment in the revised amount for the County's reasonable and necessary costs.

In the alternative, the County respectfully requests that this Court find that the County is entitled to be reimbursed for the post-retirement benefits incurred and paid since Doyne Hospital's termination from the Medicare program in 1995 through 2007, and order the Secretary to permit the County to submit cost reports for reimbursement of allowable future post-retirement expenses as accrued in the period in which they are incurred and liquidated in accordance with the Medicare regulations.

WASH_4049901.1

Dated:  May 9, 2008

Respectfully submitted,

Simon E. Dance (Bar No. 436432)
Lena Robins (Bar No. 457251)
Foley & Lardner LLP
3000 K Street, NW, Suite 500
Washington, DC 20007
202.672.5300 (phone)
202.672.5399 (fax)

*Attorneys for Plaintiff*

27

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of May 2008 the foregoing Motion for Summary Judgment and Memorandum of Points and Authorities in Support as filed with this Court was served via ECF Service on the following parties:

> CHRISTOPHER B. HARWOOD
> RICHARD SIMMONS
> Assistant United States Attorney
> Judiciary Center Building
> 555 4th Street, NW
> Washington, D.C.  20530
> (202) 307-0372
>
> LAWRENCE J. HARDER
> ANDREW SPALDING
> U.S. Department of Health and Human Services
> Office of the General Counsel
> Health Care Financing Division
> 7500 Security Boulevard, CS-05-23
> Baltimore, Maryland  21244-1850

For Plaintiff John L. Doyne Hospital