# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOHN L. DOYNE HOSPITAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07-CV-1592 |
| | ) | (JDB) |
| MICHAEL O. LEAVITT, Secretary, U.S. | ) | |
| Department of Health and Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to the Court's Scheduling Order dated March 19, 2008, Plaintiff John L. Doyne Hospital, by and through its undersigned counsel, respectfully submits its Reply In Support of Plaintiff's Motion for Summary Judgment and Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment.

Pursuant to Local Rule LCvR 7(c) and (f), Plaintiff has attached a proposed order and respectfully requests an oral hearing on the parties' cross-motions for summary judgment, the oppositions, and replies thereto. Plaintiff recognizes that the grant of oral argument is within the discretion of the Court.

Dated:  August 22, 2008                              Respectfully submitted,

Simon E. Dance (Bar No. 436432)
Lena Robins (Bar No. 457251)
**FOLEY & LARDNER LLP**
Washington Harbour
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5143
202.672.5300

*Attorneys for Plaintiff John L. Doyne Hospital*

2

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN L. DOYNE HOSPITAL,⠀⠀⠀⠀⠀⠀) | |
| ⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀) | |
| ⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀⠀⠀) | |
| ⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀) | |
| ⠀⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀) | Civil Action No. 1:07-CV-1592 |
| ⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀) | (JDB) |
| MICHAEL O. LEAVITT, Secretary, U.S.) | |
| Department of Health and Human Services,⠀) | |
| ⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀) | |
| ⠀⠀⠀⠀Defendant.⠀⠀⠀⠀⠀⠀) | |
| ⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀) | |

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Simon E. Dance (Bar No. 436432)
Lena Robins (Bar No. 457251)
**FOLEY & LARDNER LLP**
Washington Harbour
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5143

*Attorneys for Plaintiff*
*John L. Doyne Hospital*

August 22, 2008

**TABLE OF CONTENTS**

**Page**

I.   STATUTORY AND REGULATORY BACKGROUND.................................................. 2

II.  STATEMENT OF FACTS AND PRIOR PROCEEDINGS ............................................. 3

III. ARGUMENT ...................................................................................................... 4

    A.   The Secretary's Disallowance Of Doyne Hospital's Post-Retirement
        Benefits Was Arbitrary, Capricious And Contrary To The Law, And
        Should Be Reversed .................................................................................... 4

        1.   The Secretary's Mischaracterization of Doyne Hospital as a
            "Nonprovider" under the Medicare Rules is Arbitrary, Capricious
            and an Abuse of Discretion.............................................................. 5

        2.   Denying Doyne Hospital Reimbursement of Reasonable and
            Necessary Costs Frustrates the Medicare Program's Larger
            Statutory Guarantees that Providers will be Compensated and that
            Costs will Not be Shifted. .......................................................... 8

        3.   Failing to Distinguish Between Actual Incurred Costs, That the
            County Has Already Paid and Which Are Known, and Future
            Costs is Arbitrary, Capricious, an Abuse of Discretion and
            Otherwise Not in Accordance with Law...................................... 11

        4.   The Secretary's Final Decision is Inconsistent with *Sisters of St.*
            *Francis.* ......................................................................... 15

        5.   The Decision to Allow Costs for Doyne Hospital's Sick Leave
            Plan, But Not for its Post-retirement Health Benefits Plan, is
            Arbitrary, Capricious and an Abuse of Discretion................... 17

IV.  CONCLUSION.................................................................................................. 18

WASH_4779189.1

# <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*Chevron USA, Inc. v. Natural Resources Defense Counsel,*
  467 U.S. 837 (1984) ...............................................................................20

*Christensen v. Harris County,*
  529 U.S. 576 (2000) ...............................................................................20

*Detroit Receiving Hospital v. Shalala,*
  No. 98-1429, 1999 WL 970277 (6th Cir. Oct. 15, 1999) .................. 14-15

*Fed. Mar. Comm'n v. Seatrain Lines, Inc.,*
  411 U.S. 726 (1973) .................................................................................8

*Good Samaritan Hospital v. Shalala,*
  508 U.S. 402 (1993) ...............................................................................20

*Sisters of St. Francis Health Servs., Inc. v. Schweiker,*
  514 F. Supp. 607 (D.D.C. 1981) .......................................................9, 19-20

*Sun Towers, Inc. v. Heckler,*
  725 F.2d 315 (5th Cir. 1984) ............................................................13-14

*United States v. Mead Corp.,*
  533 U.S. 218 (2001) ...............................................................................20

**FEDERAL STATUTES**

5 U.S.C. §§ 706(2)(A), (E) .............................................................................8

42 U.S.C. § 1395oo(f)(2) ...............................................................................6

42 U.S.C. § 1395x(v)(1)(A) .........................................................10, 12, 13, 15

**RULES**

Local Rule 7(h) ...............................................................................................7

**REGULATIONS**

42 C.F.R. § 413.5 ...........................................................................................15

42 C.F.R. § 413.100(c)(2)(vii)(A) ...............................................................8, 10

WASH_4779189.1

Plaintiff John L. Doyne Hospital ("Doyne Hospital"), an acute care, public hospital owned and operated by Milwaukee County ("the County"), participated in Medicare as a hospital provider for nearly thirty years. During this time period, Doyne Hospital afforded its employees and their dependents post-retirement health insurance benefits, as required by governing law and various contractual obligations. The Medicare liability for such benefits is approximately $11.05 million. This total comprises both actual costs paid by the County in the amount of $3,921,282 and the net present value — based on recognized actuarial standards — of projected future payments in the amount $7,128,565. Since Doyne Hospital's voluntary closure and termination from the Medicare program in 1995, the County has faithfully paid Doyne Hospital's retiree health costs, and will continue to pay the costs associated with these benefits through 2044.

There is no dispute between the parties that the costs at issue are associated with post-retirement benefits provided to Doyne Hospital employees whose services directly benefited the Medicare program. There is also no dispute that these costs are ordinarily reimbursable under the Medicare program rules. However, the Secretary now seeks to unreasonably exploit a gap in the regulations that it conveniently applies to Doyne Hospital as a means to escape payment of the Medicare costs associated with the retiree health benefits; costs which the County assumed while a participating Medicare provider. The Secretary's characterization of Doyne Hospital as a "nonprovider" is both inequitable, unsound from a policy perspective, and unsupported by the record. Thus, the result urged by the Secretary is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law or sound public policy considerations.

Accordingly, Doyne Hospital respectfully requests that this Court deny the Secretary's motion for cross-summary judgment, grant summary judgment in favor of Doyne Hospital, reverse the Secretary's final decision, and order the Secretary to compensate the County for

approximately $11.05 million, plus interest, in costs to which it is entitled pursuant to 42 U.S.C. § 1395oo(f)(2) (2000). In the alternative, Doyne Hospital respectfully requests that the Court order the Secretary to permit the County to file its annual reports for prior years and to reimburse the County for its actual costs paid from 1995 through 2007 — costs which are entirely known and qualify unquestionably as reimbursable under the Medicare program. Thereafter, Doyne Hospital respectfully requests that the Court order the Secretary to permit the County to file annual reports for succeeding years to recover known and reimbursable Medicare costs

## I.     STATUTORY AND REGULATORY BACKGROUND

The parties in this case agree as to a majority of the issues presented. The Secretary agrees with Doyne Hospital regarding its characterization of the general structure of the Medicare program, the general reimbursement framework applicable to hospital providers, the available appeals process, and the applicable standard of review. The Secretary agrees that the County has made and continues to make payments associated with the costs of vested post-retirement health benefits to employees of Doyne Hospital and their beneficiaries. (Def.'s Mem. Supp. Mot. Summ. J. and Opp'n Pl.'s Mot. Summ. J., 9.) The Secretary agrees that the earlier methodology used to estimate the costs associated with the retiree health benefits — and the County's refinements thereto in 2007 — are not disputed and do not present an issue in this case. (Def.'s Mem. Supp. Mot. Summ. J. and Opp'n Pl.'s Mot. Summ. J., 9 n.3.) That is, the Secretary specifically agrees that "[t]he Medicare regulations expressly recognize the benefits involved in this case – post-retirement health care benefits – as potential reasonable costs and categorize them as a type of deferred compensation." (Def.'s Mem. Supp. Mot. Summ. J. and Opp'n Pl.'s Mot. Summ. J., 6.) Finally, the Secretary agrees that Doyne Hospital's post-retirement benefits plan is properly considered unfunded deferred compensation under governing Medicare rules.

2

## II.    STATEMENT OF FACTS AND PRIOR PROCEEDINGS

The Secretary plainly "agrees that all material facts in this case are those found in the record . . . and that there are no triable issues of fact." (Def.'s Mem. Supp. Mot. Summ. J. and Opp'n Pl.'s Mot. Summ. J., 11-12.)  Thus, this case is appropriate for summary judgment.

However, the Secretary makes a misguided assertion that Doyne Hospital failed to comply with Local Rule 7(h).  (Def.'s Mem. Supp. Mot. Summ. J. and Opp'n Pl.'s Mot. Summ. J., 11-12.).  Doyne Hospital submits that it fully complied with the Court's filing requirements, including Local Rule 7(h).  Doyne Hospital submitted a statement of material facts as to which there is no genuine issue with its Motion for Summary Judgment, as evidenced by the lengthy section entitled "Statement of Undisputed Facts and Prior Proceedings." (Mem. Supp. Pl.'s Mot. Summ. J., 5-10.)  In addition to this comprehensive recitation of the undisputed material facts, and as initially explained, the parties entered into a Joint Stipulation as to all factual matters as part of the hearing before the Provider Reimbursement Review Board ("PRRB").  (Mem. Supp. Pl.'s Mot. Summ. J., 5 & n.2.)  As Doyne Hospital previously stated, this Joint Stipulatoin is part of the Administrative Record.  (*See* A.R. at 776-82, 768-85.)

Despite the Secretary's clamor regarding compliance with Local Rule 7(h), neither party has identified any dispute regarding an issue of material fact, making summary judgment entirely appropriate.  Accordingly, Doyne Hospital urges this Court to hold that, as a matter of law, it is entitled to Medicare reimbursement for the reasonable and necessary costs the County incurred and will continue to incur due to the post-retirement benefits afforded former employees of Doyne Hospital and their dependents.

3

## III.    ARGUMENT

### A.    The Secretary's Disallowance Of Doyne Hospital's Post-Retirement Benefits Was Arbitrary, Capricious And Contrary To The Law, And Should Be Reversed

Although the Secretary elaborates at length regarding the applicable standard of review of a final Medicare reimbursement decision, the parties are in agreement; an agency action may be set aside, as in this case, when it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence . . . reviewed on the record of an agency hearing provided by statute." 5 U.S.C. §§ 706(2)(A), (E) (2000 & Supp. III). In applying this standard of review, a reviewing court should not merely rubber stamp the Secretary's action, but must ensure that the agency's ruling is neither clearly erroneous nor inconsistent with applicable regulations. Deference is not due when an agency's actions are "'inconsistent with a statutory mandate or . . . frustrate the congressional policy underlying a statute.'" *Fed. Mar. Comm'n v. Seatrain Lines, Inc.*, 411 U.S. 726, 746 (1973) (quoting *Volkswagenwerk Aktiengesellschaft v. Fed. Mar. Comm'n*, 390 U.S. 261, 272 (1978)).

The Secretary's conclusion that the costs associated with Doyne Hospital's post-retirement health benefits plan are not allowable is unreasonable under any standard of review. Doyne Hospital disagrees with the Secretary's unreasonable and untenably restrictive characterization of 42 C.F.R. § 413.100(c)(2)(vii)(A) (2007) as allowing costs associated with unfunded plans "only in the year that actual payment is made" and only so long as the provider may submit a cost report. This characterization is entirely unreasonable when Doyne Hospital, as a former provider, can no longer submit its yearly costs, has incurred approximately $3.9 million in actual costs, and will incur approximately $11.05 million in total costs due to benefits associated with its participation in the Medicare program. (Def.'s Mem. Supp. Mot. Summ. J. and Opp'n Pl.'s Mot. Summ. J., 8.)

4

Applicable regulations and program guidance do not address how a Medicare provider should receive payment for the reasonable and necessary costs associated with an unfunded deferred compensation plan when the provider no longer participates in Medicare. This lack of guidance is especially problematic when, as in this case, the post-retirement benefits vested during the provider's participation in the Medicare program. Thus, despite the Secretary's efforts to convince this Court otherwise, the issue is not whether sound policy reasons justify "treating unfunded plans differently." (Def.'s Mem. Supp. Mot. Summ. J. and Opp'n Pl.'s Mot. Summ. J., 8, 16.) Rather, the issue is that the Secretary abused his discretion, and acted in an arbitrary and capricious manner and otherwise not in accordance with law, when denying reimbursement for costs associated with an unfunded plan — costs that are ordinarily and routinely reimbursed — simply because the provider no longer participates in Medicare.

The Secretary's determination is unreasonable when it (1) fails to distinguish between Doyne Hospital, as a former provider that participated in and whose employees conferred a benefit on the Medicare program; (2) frustrates larger statutory and regulatory guarantees of the Medicare program; (3) fails to differentiate between the actual costs, which the County has paid and are known, and the expected future costs; (4) departs from the guidance of good case law from this jurisdiction; namely, *Sisters of St. Francis Health Services, Inc. v. Schweiker*, 514 F. Supp. 607 (D.D.C. 1981); and (5) distinguishes without principle from a similar and associated determination regarding sick leave benefits enjoyed by former employees of Doyne Hospital and their beneficiaries.

### 1. The Secretary's Mischaracterization of Doyne Hospital as a "Nonprovider" under the Medicare Rules is Arbitrary, Capricious and an Abuse of Discretion.

The Secretary concedes that Doyne Hospital is "generally right to suggest that it 'would be entitled to Medicare reimbursement if it were still a Medicare participating hospital.'" (Def.'s

Mem. Supp. Mot. Summ. J. and Opp'n Pl.'s Mot. Summ. J., 21 (emphasis, internal quotations and citation omitted).) The Secretary also concedes that 42 C.F.R. § 413.100(c)(2)(vii)(A) "does not expressly preclude" a former Medicare provider from seeking reimbursement for plan costs after the provider has terminated participation in the Medicare program. (Def.'s Mem. Supp. Mot. Summ. J. and Opp'n Pl.'s Mot. Summ. J., 20.)

Nevertheless, the Secretary urges the Court to embrace a binary view of the relevant regulation in which an entity could be classified only as a provider or a nonprovider. According to this view, Doyne Hospital, a former provider that participated in the Medicare program for thirty years, should be considered a "nonprovider," and Doyne Hospital's reasonable and necessary costs, which were incurred during its participation in the Medicare program and would ordinarily be allowed, should not be reimbursed. This interpretation does not square with the spirit and intent of the statute, is not addressed by the statute, and should, therefore, be disregarded.

As a former Medicare provider and program participant, Doyne Hospital is beyond question not a "nonprovider." When Doyne Hospital furnished services to Medicare beneficiaries, it properly incurred reasonable and necessary costs. Governing statutory provisions and regulations, including 42 U.S.C. § 1395x(v)(1)(A), guarantee providers that these incurred costs will be reimbursable. When a provider decides to terminate participation in the Medicare program, these costs do not disappear, nor should the associated guarantees. This consideration is critical. Although the Secretary is correct that the Centers for Medicare & Medicaid Services is under "no obligation to explicitly address in the regulation every factual scenario," the Secretary is required to interpret and apply a regulation so as to avoid a result that would be arbitrary, capricious or an abuse of discretion or otherwise not in accordance with law.

(Def.'s Mem. Supp. Mot. Summ. J. and Opp'n Pl.'s Mot. Summ. J., 21 & n.6.) Such is not the result when the Doyne Hospital, a Medicare provider for thirty years, is denied reimbursement as a nonprovider for the reasonable and necessary costs associated with a post-retirement benefits health plan and its participation in Medicare.

In this case, the County has actually paid approximately $3.9 million and expects to pay approximately $11.05 in total for actual and future payments for post-retirement health care benefits related to the former employees of Doyne Hospital. At the time these costs were incurred, Doyne Hospital was a Medicare provider, actively participating in the program, and whose reasonable and necessary costs Medicare had guaranteed it would reimburse. This much is undisputed. Although the Secretary concedes that Doyne Hospital would have been reimbursed for these costs "had the Hospital continued participation in the Medicare program," the Secretary argues that, unfortunately, Doyne Hospital can no longer be reimbursed because it terminated its participation. (Def.'s Mem. Supp. Mot. Summ. J. and Opp'n Pl.'s Mot. Summ. J., 28 (emphasis omitted).)

The Secretary's suggested result creates disparate treatment to providers who operate unfunded deferred compensation programs and terminate their participation in the Medicare program. This result fails to provide any method for former providers to receive compensation for the incurred reasonable and necessary costs associated with vested deferred compensation plans; costs which, significantly, the Medicare program would have ordinarily reimbursed. Moreover, this result is inconsistent with the Medicare statute's overarching requirement that providers should be reimbursed for the reasonable and necessary costs incurred in providing services to Medicare beneficiaries. *See* 42 U.S.C. § 1395x(v)(1)(A) (2000). Nor is this result is

7

supported by Medicare policy or sound judgment. Most importantly, this result is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law.

While the Secretary generally recites applicable statutes and regulations that generically use the term "providers," these provisions do not compel the conclusion that a former provider like Doyne Hospital should be denied reimbursement for reasonable and necessary costs associated with participation in the Medicare program. Taken together, these provisions do not compel the conclusion that Doyne Hospital, as a former provider, should have the same rights to pursue reimbursement under the statute as, for instance, a hospital that never participated in the Medicare program and, consequently, never conferred any benefit. The Secretary's proffered result places the County in an untenable position. The County has incurred and paid for millions in costs related to post-retirement benefits since 1995, but is not able to seek Medicare reimbursement for these costs, even though they conferred a benefit on the Medicare program, simply because no available procedural mechanism exists. This is unreasonable.

2. **Denying Doyne Hospital Reimbursement of Reasonable and Necessary Costs Frustrates the Medicare Program's Larger Statutory Guarantees that Providers will be Compensated and that Costs will Not be Shifted.**

The Secretary readily recognizes that the Medicare program's "reasonable cost rules are designed specifically to ensure that Medicare should bear its fair share of the costs, nothing more and nothing less." (Def.'s Mem. Supp. Mot. Summ. J. and Opp'n Pl.'s Mot. Summ. J., 18.) Considering this admission however, the Secretary fails to adequately justify how it is reasonable or fair to deny the County reimbursement for approximately $11.05 million in actual and future post-retirement health benefit costs, liability for which both parties agree arose from Doyne Hospital's participation in the Medicare program. This is a perfect example of the Medicare

8

program not bearing its fair share and shifting costs to taxpayers in contravention of the statutory cross-subsidization prohibition. *See* 42 U.S.C. § 1395x(v)(1)(A)(i).

The cases that the Secretary offhandedly cites to support its contention that the denial of reimbursement to Doyne Hospital does not constitute cost-shifting are not useful to the Court. The parties in those cases sought Medicare reimbursement for wholly inappropriate costs that would never have been recognized as allowable under the Medicare program. (Def.'s Mem. Supp. Mot. Summ. J. and Opp'n Pl.'s Mot. Summ. J., 19.) This is not the case regarding Doyne Hospital's claimed costs, which are undisputedly reasonable, necessary and generally allowable, as the Secretary concedes.

For example, the plaintiffs in *Sun Towers, Inc. v. Heckler*, 725 F.2d 315 (5th Cir. 1984), were a group of hospitals owned and operated by Hospital Corporation of America ("HCA"). After HCA had evaluated several hospitals for "possible acquisition, ultimately purchasing some but deciding not to acquire others," it had disingenuously attempted to seek Medicare reimbursement for the costs associated with these profit-related decisions. *Id.* at 332. As the Secretary explained in that case, HCA was interested in "acquiring hospitals so as to increase corporate profits. While Medicare reimburses a provider's reasonable costs, it does not reimburse the costs of seeking additional earnings to the extent that those costs are unrelated to patient care." *Id.* This is the actual context of the observation, which the Secretary now only excerpts, that under HCA's inane logic "no cost could ever be disallowed." *Id.* at 333 (internal quotation and citation omitted).

Denying a hospital group's inappropriate attempts to claim costs related to expansion and profit seeking as in *Sun Towers* is inapposite to the facts of this case. Doyne Hospital's claims do not involve a disingenuous effort to seek Medicare reimbursement for costs associated with

9

its efforts to increase corporate profits. Quite the contrary. All parties concede that the reasonable and necessary costs at issue arose from Doyne Hospital affording health care services to Medicare beneficiaries. The Secretary also concedes that Doyne Hospital has acted in good faith and amended its costs so as to *decrease* its cost estimates. Such was not the case in *Sun Towers*.

Similarly, *Detroit Receiving Hospital v. Shalala*, No. 98-1429, 1999 WL 970277 (6th Cir. Oct. 15, 1999), an unpublished case from the U.S. Court of Appeals for the Sixth Circuit, involved a dispute regarding the disallowance of a hospital's claim for Medicare bad debt. Although the hospital in that case had referred its own non-Medicare bad debt to a collection agency, the hospital had failed to act as conscientiously with regards to its Medicare bad debt. Thus, the Sixth Circuit agreed with district court's conclusion that the Secretary had acted reasonably in denying the hospital's claims; the hospital had failed to make reasonable collection efforts, as required by relevant regulations. The Sixth Circuit's consideration of any "cross-subsidization" or cost-shifting argument in *Detroit Receiving Hospital* was little more than an afterthought, especially considering that the argument initially appeared in the hospital's reply brief. More importantly, the first and most significant reason the Sixth Circuit rejected this argument was because "the Hospital may still attempt to recover the bad debts from the debtors themselves." *Id*. at *6.

This is not an option for Doyne Hospital. The actual and incurred costs are associated with a post-retirement benefits plan, not bad debts, and there are no debtors to pursue. Further, *Detroit Receiving Hospital* stands for the proposition that the Secretary is reasonable to require hospitals to act in good faith in order to receive reimbursement; "Government will reimburse their Medicare bad debt, but only if they make a diligent effort to collect it first." *Id*. at *5. This

10

proposition is inapposite in this case. Doyne Hospital acted in good faith, as the Secretary concedes, unlike in *Detroit Receiving Hospital,* and yet the Secretary still refuses to reimburse its reasonable and necessary costs. The Secretary's denial of reimbursement to Doyne Hospital is not supported by the facts or reasoning of *Detroit Receiving Hospital.*

Doyne Hospital simply seeks Medicare to pay its fair share; nothing more and nothing less. The Secretary's denial of reimbursement is entirely inconsistent with the Medicare statute's prohibition on cost shifting, and the overarching requirement that program providers be reimbursed for the reasonable and necessary costs incurred in providing services to program beneficiaries. *See* 42 U.S.C. § 1395x(v)(1)(A); 42 C.F.R. § 413.5. The result proposed by the Secretary allows the Medicare program to escape approximately $3.9 million in actual costs, and as much as $11.05 million in actual and future costs, and to place the burden instead on County taxpayers — a perfect example of statutorily prohibited cost-shifting.

> 3. **Failing to Distinguish Between Actual Incurred Costs, That the County Has Already Paid and Which Are Known, and Future Costs is Arbitrary, Capricious, an Abuse of Discretion and Otherwise Not in Accordance with Law.**

Throughout, the Secretary fails to distinguish between Doyne Hospital's claims for reimbursement based on *actual costs* as compared to *future costs*. The distinction between the two is not a distinction without difference: it is critical.

The County has already paid approximately $3.9 million in actual costs related to Doyne Hospital's post-retirement health care benefit plan, and yet the Secretary disingenuously argues that this case is a "perfect illustration of why the Secretary will not reimburse providers for unfunded postretirement health benefit plans," because the "amount that the provider actually incurs for these costs simply cannot be known." (Def.'s Mem. Supp. Mot. Summ. J. and Opp'n

WASH_4779189.1

Pl.'s Mot. Summ. J., 17, 18.)  The actual costs in this case are known, and yet the Secretary still refuses to allow them.

The Secretary further suggests that "[had] the benefits . . . been actually paid, the Hospital would [have been] in full compliance with the Secretary's reimbursement procedures . . . and . . . the Secretary would [have reimbursed] the Hospital for these actual costs."  (Def.'s Mem. Supp. Mot. Summ. J. and Opp'n Pl.'s Mot. Summ. J., 17, 21.)  Again, approximately $3.9 million in costs have actually been paid, but despite the Secretary's hollow guarantee, the County has not been reimbursed for these actual costs.  Moreover, this discussion of actual costs does not address the balance of the approximately $11.05 million that, according to updated estimates, the County will ultimately incur.

Notably, the Secretary concedes that the County made a "good faith effort to identity the costs it incurred" by, for example, updating costs estimates that are "lower, not higher, than the previous figure."  (Def.'s Mem. Supp. Mot. Summ. J. and Opp'n Pl.'s Mot. Summ. J., 18.)  Despite this acknowledgment, the Secretary criticizes the County for providing updated and amended cost reports, and uses the County's candor and diligence in pursuing these revised and lower cost estimates as both a sword and shield; yet another example of why the Secretary is unreasonable in refusing to reimburse the County.  (Def.'s Mem. Supp. Mot. Summ. J. and Opp'n Pl.'s Mot. Summ. J., 17, 18.)

First, the Secretary's portrayal of the 1998 Amended Cost Report and the County's subsequent claim updates in 2004 and 2007 as proof that these costs cannot be estimated with reasonable accuracy is entirely disingenuous.  The County developed its methodology, without any guidance or objection from the Secretary, the PRRB or the Intermediary, in order to present a claim for its retiree health benefit costs.  The County proactively engaged in revisions to these

12

costs in good faith, to ensure that it represented the most accurate accounting of its costs and requested no more in reimbursement from the Medicare program than was reasonable. To now suggest that the County should be punished for its candor and good faith efforts inevitably discourages cost savings in the long run and, ultimately, makes the Medicare system bear the unnecessary expenses of useless waste, an ironic position in the context of this case.

Second, the modifications to the cost estimates should not be simply dismissed as "wide fluctuations." (Def.'s Mem. Supp. Mot. Summ. J. and Opp'n Pl.'s Mot. Summ. J., 18.) As the Secretary concedes, the County's revised total of $11.05 million is approximately $1 million less than the previous estimate — an amount reflective of the County's good faith efforts. (Def.'s Mem. Supp. Mot. Summ. J. and Opp'n Pl.'s Mot. Summ. J., 18.) More significantly, $3.9 million of those costs are actual costs that have already been paid, will not fluctuate, and are not estimates. At the very least, $3.9 million in costs "can[] be known in advance with a[] reasonable degree of accuracy." (Def.'s Mem. Supp. Mot. Summ. J. and Opp'n Pl.'s Mot. Summ. J., 18.) These costs comprise a substantial amount of the approximately $11.05 million figure most recently submitted through the County's 2007 updated claim. Moreover, there is no dispute between the parties regarding the soundness of the methodology developed by the County, and/or refinements thereto, used in arriving at these numbers. In its 2007 updated claim, the County used the same actuarial assumptions as in its 2004 updated claim, assumptions that were not challenged by the government. The 2007 updated claim used the same mortality tables and retirement assumptions that went unchallenged by the government in 2004 and go unchallenged now.

Significantly, during the course of the administrative appeals process, neither the Intermediary, the PRRB, nor the Secretary objected to the underlying methodology or offered the

13

County any alternatives. Never before have the County's revision efforts in 2004 and 2007 been a source for objection. Yet, for the first time here, the Secretary argues that it is these very updates in cost estimates that prevent reimbursement. Such arguments must fail. In 2007, the only revision resulted from the County reevaluating the retiree population to determine the percentage of former Doyne Hospital employees. The result of this reevaluation was a decline in the percentage of health insurance costs attributed to Doyne Hospital retirees, and a corresponding reduction in the projected future post-retirement health benefits. Because there has never before been an objection to the County's good faith refining efforts, it is both disingenuous and unsupported by the record for the Secretary to now contend that it is the County's estimates that prevent reimbursement, and that the County developed this methodology as the only means to present a claim for its retiree health benefit costs.

The Secretary failed Doyne Hospital, a former provider, by not crafting a mechanism to recover its *bona fide* costs under the Medicare program. To argue that the current status of a former provider prevents Medicare reimbursement is to engage in revisionist history, and to ignore the purpose of the reimbursement statute and other statutory guarantees prohibiting cost-shifting. To reimburse Doyne Hospital for its properly incurred costs is not to open a flood gate of claims from other hospitals; but, rather, to comport with the larger intent of these statutory provisions. It is not Doyne Hospital's burden to bridge the gap in the statute. Rather, the Secretary is charged with implementing the statute and its interpretations are afforded deference only if reasonable. Here, the Secretary's denial of reimbursement of retiree benefits is unreasonable and should be rejected. In failing to distinguish between actual costs and future costs, the Secretary invites this Court to accept an unreasonable interpretation that would deny

14

reimbursement for both actual, known costs and future costs, based solely on the fact that the provider terminated its participation in the Medicare program.

      **4.**    **The Secretary's Final Decision is Inconsistent with *Sisters of St. Francis.***

This Court ruled in *Sisters of St. Francis v. Schweiker*, 514 F. Supp. 607, 615 (D.D.C. 1981.), that unemployment and pension costs, attributable to services rendered to Medicare patients prior to the hospital's termination from the Medicare program, were allowable even though *the costs were paid after* the hospital's closure. *Id.* at 615. Despite the obvious relevancy of the case, the Secretary urges this Court to ignore *Sisters of St. Francis* and to conclude that Doyne Hospital's post-retirement health benefit costs, similarly attributable to services rendered to Medicare patients prior to the hospital's termination from the Medicare program, should not be allowed. Notwithstanding any slight factual differences between the cases, the Secretary's final decision reaches an inconsistent result and is arbitrary and capricious and contrary to controlling law.

For all relevant purposes, the facts of *Sisters of St. Francis* are strikingly similar to the facts of this case. Sisters of St. Francis Health Services was a not-for-profit corporation that owned and operated St. Joseph Hospital that closed its doors in December 1973. Similar to the events in this case, Sisters of St. Francis reported $37,737.24 in unemployment compensation payments, which were attributable to hospital services and were made *subsequent to termination* of operations. *Id.* at 610. As here, the intermediary in *Sisters of St. Francis* disallowed the costs, related to pension plan payments and administrative expenses, because "the costs were paid subsequent to the date of termination." *Id* The Secretary attempts to distinguish *Sisters of St. Francis* by arguing a fiction; specifically, that a critical analytical element of the court's holding was whether the costs at issue were included in the final cost report. That is incorrect.

WASH_4779189.1

As the court explained in a passage that could be easily mistaken for an argument in this case, it grounded its reasoning in the fact that the "unemployment benefits were earned by employees when providing services to Medicare beneficiaries and other patients. . . . Even though the precise amounts of those costs were not known at the time of closing, they are costs accrued before termination." *Id.* at 615.

Considering the nature of the court's conclusion in *Sisters of St. Francis*, it is not of great relevance that the case was decided a few years prior to *Chevron USA, Inc. v. Natural Resources Defense Counsel*, 467 U.S. 837 (1984). *Chevron* is generally recognized as introducing the concept that an agency's reasonable interpretation of a statute is owed deference only so long as it is not arbitrary, capricious, or "manifestly contrary." *Id.* at 844. Although this Court did not specifically decide *Sisters of St. Francis* under the *Chevron* rubric, the Court made clear that the agency had acted so improperly in denying reimbursement for these costs so as to be unreasonable. And, although the Secretary is obviously correct when observing that *Chevron* "shifted" the "landscape of administrative law," this landscape has continued to change through the issuance of decisions in such significant cases as; for example, *United States v. Mead Corp.*, 533 U.S. 218 (2001); and *Christensen v. Harris County*, 529 U.S. 576 (2000). These cases, however, hardly render irrelevant any other case on point decided before 2000, and yet this is absurdly akin to what the Secretary now asks the Court to do with respect to *Sisters of St. Francis* and *Chevron*.

Furthermore, that the Supreme Court considered reasonable the agency's interpretation of Section 1395x(v)(1)(A)(ii) as a "book keeping provision" in *Good Samaritan Hospital v. Shalala*, 508 U.S. 402 (1993), does not affect" the merits of the Doyne Hospital's underlying argument. Regardless of the Court's reluctant acceptance of the agency's interpretation of

16

Section 1395(x)(v)(1)(A)(ii), this Court may set aside the Secretary's action to the extent that it is unreasonable based on general and well-recognized administrative law principles. Doyne Hospital need not rely on any other reasonable interpretation of Section 1395x(v)(1)(A)(ii) in support of its claim that its actual and future costs should be allowed.

> **5.     The Decision to Allow Costs for Doyne Hospital's Sick Leave Plan, But Not for its Post-retirement Health Benefits Plan, is Arbitrary, Capricious and an Abuse of Discretion.**

The Secretary mischaracterizes the record in asserting that the Intermediary's decision to allow the costs for Doyne Hospital's unfunded sick leave plan was, "quite simply, a factual mistake" or a "misunderstanding." (Def.'s Mem. Supp. Mot. Summ. J. and Opp'n Pl.'s Mot. Summ. J., 23.) The circumstances are just not that simple. In making its decision regarding the unfunded sick leave plan, the Intermediary said it relied on work papers prepared by the Intermediary and its auditors. (A.R. 130.) The last paragraph of the work papers plainly reported that the "sick and vacation pay calculation amount included a factor for the percentage of people who remained at the County until retirement based on the current age," thus clearly identifying the benefit as an unfunded liability that would continue to pay out as individuals retired. (A.R. 130.) Armed with this knowledge, the Intermediary approved reimbursement for costs associated with the unfunded sick leave plan anyway, despite what the Secretary claims. The Intermediary's attempt to disown this decision in testimony provided at the PRRB hearing was disingenuous at best. Significantly, the allowed costs amounted to only $641,778, although the nature of the unfunded sick leave plan is exactly the same as the nature of the unfunded retiree health benefits plan. (A.R. 6.)

The Secretary presents no case law that would support the conclusion that this Court should simply ignore inconsistent reimbursement decisions based on the Secretary's assertion that this result was simply "a mistake." Deference does not invite a court to abdicate its role in

17

critically assessing an agency's action and understanding true motivations.  Thus, the Court should take into consideration the fact that the Intermediary allowed Doyne Hospital's incurred but unfunded sick leave costs, which were of the exact same nature as the retiree health benefit costs at issue here.

## IV.    CONCLUSION

For the foregoing reasons, Doyne Hospital respectfully requests that the Court grant Doyne Hospital's Motion for Summary Judgment and deny the Secretary's Cross-Motion for Summary Judgment.

Dated:  August 22, 2008                                          Respectfully submitted,

                                                Simon E. Dance (Bar No. 436432)
                                                Lena Robins (Bar No. 457251)
                                                **FOLEY & LARDNER LLP**
                                                Washington Harbour
                                                3000 K Street, N.W., Suite 500
                                                Washington, D.C. 20007-5143
                                                202.672.5300

                                                *Attorneys for Plaintiff John L. Doyne Hospital*

WASH_4779189.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of August, 2008 the foregoing Reply In Support Of Plaintiff's Motion For Summary Judgment And Memorandum Of Points And Authorities In Opposition To Defendant's Motion For Summary Judgment as filed with this Court was served via ECF Service on the following parties:

> CHRISTOPHER B. HARWOOD
> RICHARD SIMMONS
> Assistant United States Attorney
> Judiciary Center Building
> 555 4th Street, NW
> Washington, D.C.  20530
> (202) 307-0372
>
> LAWRENCE J. HARDER
> ANDREW SPALDING
> U.S. Department of Health and Human Services
> Office of the General Counsel
> Health Care Financing Division
> 7500 Security Boulevard, CS-05-23
> Baltimore, Maryland  21244-1850

For Plaintiff John L. Doyne Hospital

WASH_4779189.1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JOHN L. DOYNE HOSPITAL,     )
                              )
        Plaintiff,         )
                              )
        v.             )     Civil Action No. 1:07-CV-1592
                              )           (JDB)
MICHAEL O. LEAVITT, Secretary, U.S.  )
Department of Health and Human Services,  )
                              )
        Defendant.      )
                              )

## PROPOSED ORDER

Upon consideration of the parties' cross-motions for summary judgment, oppositions and replies thereto, and the entire record herein, it is, this _____ day of _____, 2008,

ORDERED, that Plaintiff's Motion for Summary Judgment be, and hereby is, GRANTED; and it is further

ORDERED, that Defendant's Motion for Summary Judgment be, and hereby is, DENIED; and it is further

ORDERED, that judgment be, and hereby is, entered in favor of Plaintiff and against Defendant.

                                          _____
                                          JOHN D. BATES
                                          United States District Judge

Copy to:  ECF Counsel